UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X
SOUND SHORE SALVAGE, INC. d/b/a SEA
TOW WESTERN LONG ISLAND SOUND,

       Plaintiff,    C.A. No.: 07-CIV-7976 (Swain)

  -against-

JEFFREY S. WASSERMAN,

       Defendant.
------------------------------------------------------------X

## PROPOSED JOINT PRELIMINARY PRE-TRIAL STATEMENT

Plaintiff, SOUND SHORE SALVAGE, INC. d/b/a/ SEA TOW WESTERN LONG ISLAND SOUND (hereinafter "SOUND SHORE"),  by its attorneys, DeOrchis, Wiener & Partners, LLP, and Defendant JEFFREY S. WASSERMAN, by his attorney, Rubin Fiorella & Friedman, LLP as and for their disclosures pursuant to Fed. R. Civ. P. 26(f), and the Order of this Honorable Court,  allege upon information and belief, as follows:

**a.**  **A concise statement of the nature of this action.**

**Plaintiff's Statement**

Plaintiff, a professional marine salvage company, seeks a salvage award for the services it rendered to a luxury motor yacht.  The yacht, owned by defendant, was flooding with seawater and was in a position of extreme peril.  Plaintiff's efforts were successful and resulted in the preservation of almost all of the yacht's (and its appurtenance's) value.  Plaintiff also seeks an equitable uplift, attorneys fees and costs, and prejudgment and post-judgment interest.

**Defendant's Statement**

Defendant owns a 1998 54-foot Sea Ray vessel.  While underway in the Hudson River, the vessel contacted a submerged object.  Defendant continued to proceed with the vessel under its own power and without assistance from plaintiff.  At the time plaintiff responded, the vessel was not in a state of marine peril.  Further, plaintiff did not provide the salvage services alleged in the Complaint.

The central issue here is what amount, if any, plaintiff should be compensated for the simple services that it provided to defendant.

**b.  A concise statement as to each party's position as to the basis of this Court's jurisdiction of the action, with citations to all statutes relied upon and relevant facts as to citizenship and jurisdictional amount.**

The Parties agree that admiralty jurisdiction exists pursuant to 28 U.S.C. § 1333.

**c.  A concise statement of all material uncontested or admitted facts.**

At this juncture, the Parties can only agree (i) that the defendant was the owner of the yacht on the date in question; and (ii) that the services rendered by Plaintiff were rendered while the yacht was located on navigable waters.

**d.  A concise statement of all uncontested legal issues.**

At this juncture, the Parties can only agree (i) that the Court has jurisdiction over all the parties.

**e.  A concise statement of all legal issues to be decided by the Court.**

(i) Any factual issue set forth herein which may be a mixed issue of law and fact; (ii) Whether salvage services were provided to the M/V P F FLYER; (iii) If salvage services are found to have been provided, the appropriate award to Plaintiff for rendering salvage services to the M/V P F FLYER; (iv) If just a tow or an escort service, the cost of that service; (v) If salvage services are found to have been provided and a salvage award given, the uplift, if any, this Court determines is appropriate should Plaintiff be found to be professional salvors; (v) Whether Plaintiff is entitled to contract to its attorneys' fees and costs; (vi) Whether Plaintiff's failure to concede salvage services entitles Plaintiff to an award of attorneys' fees and costs; and (vi) Post-judgment and prejudgment interest to be awarded Plaintiff, if any.

Additional legal issues may exist, but these reflect what the Parties believe to be the major legal issues at this time.

**f.  Each party's concise statement of material disputed facts.**

Plaintiff's Statement:

On August 20, 2006, the M/Y P F FLYER issued a distress call to Sound Shore Salvage via the V.H.F. Marine Radio.  The M/Y P F FLYER reported that it was taking on water and sought immediate assistance.  In response to the distress call, and due to the urgency of the report, Sound Shore Salvage immediately dispatched three salvage vessels to the M/Y P F FLYER's location.  Upon arriving on scene, SOUND SHORE observed the M/Y P F FLYER to be in a position of extreme marine peril.  Specifically,

Sound Shore Salvage observed the stern of the M/Y P F FLYER to be squatting low in the water.  Sound Shore Salvage further observed that the M/Y P F FLYER had struck an object resulting in breaches to the yacht's hull and a corresponding loss of watertight integrity.  With permission from the master and owner of the M/Y P F FLYER, Sound Shore Salvage conceived and implemented a salvage plan whereby dewatering pumps were utilized to lower the seawater level so that the hull could be temporarily patched. Thereafter, Sound Shore Salvage towed the M/Y P F FLYER to an emergency haul-out facility where the vessel was ultimately hauled from the water and successfully redelivered to its owner.  At the time Sound Shore Salvage rendered its services, there were no other resources willing and/or capable of rendering services to the M/Y P F FLYER such that it would have experienced a great loss of value had Sound Shore Salvage not promptly responded.  Sound Shore Salvage's efforts were wholly successful and, upon information and belief, the M/Y P F FLYER suffered only minor damages.  Furthermore, Sound Shore Salvage's successful efforts prevented a significant pollution event by preventing the discharge of bunker fuel, lube oils, hydraulic oils, gray water, *etc.* which would have occurred had the M/Y P F FLYER succumbed to the seawater flooding condition.

Defendant's Statement:

Defendant owns a 1998 54-foot Sea Ray vessel.  While underway in the Hudson River, the vessel contacted a submerged object.  Defendant continued to proceed with the vessel under its own power and without assistance from plaintiff.  At the time plaintiff responded, the vessel was not in a state of marine peril.  Further, plaintiff did not provide the salvage services as alleged in the Complaint.

g.    **A concise statement by the plaintiff of the legal basis of each cause of action asserted, including citations to all statutes, Federal Rules of Civil Procedure, other rules and case law intended to be relied upon by such plaintiff.**

Plaintiff's Statement:

Plaintiff asserts an entitlement to a salvage award pursuant to the 1989 International Convention on Salvage and the General Maritime Law of the United States.  It asserts an entitlement to its attorneys fees and costs pursuant to general contract principles.  It further asserts that this Court has the discretion to award attorneys fees and costs to it as a salver pursuant to Conolly v. S.S. KARINA II, 302 F. Supp. 675 (S.D.N.Y. 1969).  Finally, plaintiff asserts an entitlement to prejudgment interest pursuant to Virgin Offshore U.S.A., Inc. v. Tex. Crewboats, Inc., 2007 U.S. Dist. LEXUS 41484*11 (W.D. LA., June 7, 2007) ("In admiralty cases, the award of prejudgment interest from the date of loss is the rule rather than the exception").

h.    **Each party's concise statement of the legal basis of each defense asserted or expected to be asserted by such party, including citations to all statutes, Federal Rules of Civil Procedure, other rules and case law intended to be**

**relied upon by such party.**

Plaintiff's Statement:

      Not applicable at this time.

Defendant's Statement:

      The service provided by plaintiff was not a salvage.  At best, the service provided was a simple escort of the vessel.

**I.     A concise statement of the measure of proof and on whom the burden of proof falls as to each cause of action.**

Plaintiff's Statement:

      Plaintiff will be required to prove, by a preponderance of the evidence, that the vessel was in peril, that it voluntarily rendered its services to the vessel, and that its services conferred a benefit upon the vessel.  Plaintiff must also prove the existence of a contract entitling it to receive its attorneys fees and costs, and/or proof of bad faith entitling it to the same.

Defendant's Statement:

      Plaintiff bears the burden of proof as to all elements of its claim.

**j.     Amendments to pleadings and/or addition or substitution of parties:**

      None currently anticipated.  However, both parties following the conclusion of factual discovery may need to amend their pleadings accordingly.  Plaintiff may also amend its complaint to add the vessel as a Defendant.

**k.     A statement as to whether all parties consent to trial of the case by a magistrate judge.**

      At this time, the Parties have not reached agreement on this issue.

**l.     What if any changes are to be made to timing, form or requirements of disclosures under FRCP 26(a); when were Rule 26(a) disclosures made.**

      No changes are currently anticipated.  Plaintiff will serve its' disclosures prior to the Initial Case Management Conference, and Defendant will serve its disclosures within fourteen (14) days following service of his Answer.

**m.     Subjects on which disclosure may be needed, and whether discovery should be conducted in phases or be limited to or focus upon particular**

4

**issues, including a concise description of each party's plan for discovery and proposed discovery cut-off date.**

Plaintiff contemplates serving written discovery and deposing defendant and any passenger(s) aboard the M/V P F FLYER at the time of the incident. Plaintiff contemplates an expert witness deposition.

Defendant contemplates serving written discovery and deposing plaintiff and any representative or employ of plaintiff who is taking the position that the services rendered was somehow a salvage operation. Defendant contemplates a deposition of an expert witness.

It is requested that an Order issue settling the conclusion of fact discovery for Friday, March 7, 2008; (ii) setting April 4, 2008 as the date by which expert reports are to be concurrently served; and (iii) April 18, 2008 as the date by which to complete expert depositions.

**n.     Expert evidence.**

At this time, Plaintiff expects that it will call an expert in the maritime salvage industry and/or an expert familiar with the design/construction of the specific yacht in question. In addition, and to the extent such testimony is identified as "expert" testimony, Plaintiff will provide testimony on the value of its vessels; the value of the infrastructure needed to respond to the incident; the degree and extent of the peril faced by the M/V P F FLYER based on its collective experience; and the quantum of payments and salvage awards it has received for similar such incidents.

Defendant contemplates calling an marine expert to demonstrate that plaintiff did not perform a salvage service.

**o.     Changes to limitations on discovery, and further limitations:**

None currently anticipated.

**p.     The status of settlement discussions and prospects for settlement of the action in whole or in part.**

None currently.

**q.     Jury / non-jury.**

Non-jury.

**r.     Other orders pursuant to FRCP 26(c), or 16(b) and (c).**

None at this time.

Dated:  New York, New York
        December 13, 2007

DeOrchis, Wiener & Partners, L.L.P.
*Attorneys for Plaintiff*

/s/ John K. Fulweiler

By*:* _____
     Mr. John K. Fulweiler, Esq.
     61 Broadway, 26th Floor
     New York, New York 10006-2802
     Tel: 212-344-4700


Rubin, Fiorella & Friedman, LLP
*Attorneys for Defendant*

/s/ Michael E. Stern

By: _____
     James E. Mercante, Esq.
     Michael E. Stern, Esq.
     292 Madison Avenue
     New York, New York  10017
     Tel:  212-953-2381